(No. 31297.—

John E. Speroni, individually and as admr., Appellant, *vs.* Esther L. Speroni, Appellee.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

Sheldon & Brown, and Alexander L. Haglund, both of Sterling, for appellant.

Dixon, Devine & Bracken, of Dixon, and Robert W. Besse, of Sterling, (Robert L. Bracken, of counsel,) for appellee.

Mr. Justice Daily delivered the opinion of the court:

John E. Speroni, individually and as administrator of the estate of Melinda Speroni, his mother, appeals to this court from a decree of the circuit court of Whiteside County, dismissing for want of equity, an amended complaint which, in effect, sought to recover from Esther L. Speroni, the appellee, certain assets purportedly belonging to the estate of Peter J. Speroni, deceased. Melinda died

during the course of the litigation, which accounts for John's appearance both as an individual and as her administrator.

The amended complaint alleges that Peter J. Speroni, a brother of John and son of Melinda, was married to appellee, Esther L. Speroni, on July 13, 1921; that they thereafter lived together as man and wife until Peter's death, October 3, 1940, the latter at all times believing Esther to be a true and faithful wife; that Esther claims to have obtained, and did obtain, a divorce in the State of Arkansas during November, 1934, which fact was unknown to Peter. It further charges that on June 15, 1939, Esther married James P. Huddleston, under his alias of James P. Murphy, in a ceremony performed in the State of Indiana; that on October 2, 1940, Huddleston committed a murderous assault on Peter, from which he died the following day, and for which Huddleston was convicted and sentenced to the Illinois State Penitentiary.

Continuing, the amended complaint alleges that Peter executed a will on January 19, 1932, by which he gave all his property "to my beloved wife Esther L. Speroni;" that on March 27, 1937, Peter purchased a farm in Whiteside County for $10,000 and had the deed made to Esther as grantee; that on May 18, 1935, Peter insured his life for $2500 making Esther L. Speroni, "my wife," beneficiary, (the proceeds of the policy had been paid to the clerk of the court pending the outcome of this suit;) and that on June 19, 1940, Peter quitclaimed to Esther their residence property in Rock Falls, Illinois. The complaint further contains general and specific allegations of fraud on the part of Esther, and charges that she and Huddleston conspired to procure all of Peter's property, and that his murder was the culmination of such conspiracy. The general tenor of other allegations is that Esther's divorce and subsequent marriage to Huddleston, revoked Peter's will, or that if she had not secured a divorce, her criminal conduct

of entering into a bigamous marriage effected either a revocation of the said will, or a forfeiture of her rights to take under it. The complaint prayed that the will be declared revoked, and that Esther be required to convey, or account to appellants for, the property in her possession. It also asked that the proceeds of the insurance policy be paid to Peter's estate, and that Esther's marriage to Peter be annulled and a decree entered depriving her of a widow's rights.

Appellee's answer either admitted or denied the separate allegations of the amended complaint. As to the averments concerning her divorce, she admitted that she once claimed to have secured a divorce, but that she was in error and denied that a divorce was secured. She denied fraud or conspiracy, or that plaintiffs were entitled to the relief prayed.

The hearing of the cause has been extended over a period of eight years. The proof introduced by plaintiffs, for the most part, seeks to establish that appellee had divorced Peter and remarried after the execution of the will, or if not, had criminally entered into a bigamous marriage. Outside of testimony to identify exhibits and to explain the transaction concerning the purchase of the farm, appellee was the only witness to testify. In 1941 her deposition was put into evidence and, at the time, on advice of counsel, she refused to answer as to whether she had testified at the coroner's inquest on Peter's death, that she had obtained a divorce in Arkansas in 1934. At another hearing, when called as a witness under section 60 of the Civil Practice Act, her response was that she did not remember making such a statement at the inquest. At this time, however, her counsel admitted that she had so testified, and a transcript of the proceeding before the coroner was admitted in evidence. It shows that on October 3, 1940, she testified under oath that she was divorced from Peter J.

Speroni at Hot Springs, Arkansas, in October, 1934. No other evidence to establish the divorce, oral or documentary, was offered, or appears in the record. Further, at the inquest, she told of her acquaintance with Huddleston, saying he had been in the traveling show business, had been associated with Peter Speroni at times, and that she had known Huddleston two and one-half years before she married him.

The balance of appellee's testimony during her court appearance described her marriage to Peter and told of her investment of an inheritance in his show business. She stated that they lived as husband and wife at all times from their marriage in 1921 until 1933 or 1934, except for a brief period in 1925, and that they had continued business relations during the entire period from 1921 to the time of Peter's death. She further testified that the farm purchased in her name was paid for from her own money. In this claim she is supported by the testimony of an officer of the company from whom the farm was purchased, who testified that what purchase and mortgage payments were not paid by bank drafts had been paid by checks signed by appellee, drawn on an account in a bank at Sterling, Illinois.

The documentary evidence, among other things, consists of the 1939 Indiana marriage application and certificate of appellee and Huddleston, under his alias of Murphy. It is urged that these documents show that appellee committed perjury when she stated that the marriage was her first, and that her name was Esther Larrabee, which was in fact her maiden name.

An opinion of the trial court, filed May 12, 1949, determined that on the pleadings and proof, the issue made was whether the divorce obtained by Esther was effective as a revocation of Peter's will. He concluded that it did not have such effect under the laws of this State and entered an order which found Esther to be the owner of all Peter's

property by virtue of his will, that she was entitled to the proceeds of the insurance policy, and dismissed the complaint for want of equity.

Appellant reasserts his contentions in this court urging that the divorce revoked the will, and that appellee's criminal and fraudulent conduct has caused her to forfeit all rights under the will. It is conceded that there is no express legislative enactment which provides the subsequent divorce of one spouse acts as a revocation of the prior will of the other, but appellant insists that such facts create a situation where this court will imply a revocation. Appellant is also cognizant of the fact that this court held in *Gartin* v. *Gartin,* 371* Ill. 418, that, under our statute, subsequent divorce does not revoke a prior will by implication. Appellant meets this case by asserting that he considers it unsound, and argues that it was overruled by the case of *Oglesby* v. *Springfield Marine Bank,* 395 Ill. 37. An examination of the latter case discloses that the issue there is entirely foreign to the issue in the *Gartin* case and the present case. Appellant has seized on general language relating to the revocation of wills by implication and sees it as applying to divorce. A judicial opinion must be read as applicable only to the facts involved and as authority only for what is actually decided. (*White* v. *Seitz,* 342 Ill. 266.) As in the *Gartin case,* we conclude that appellee's divorce, if she did secure one, did not effect a revocation of the will.

We find no cases, nor has counsel cited any, which hold the subsequent remarriage of a wife beneficiary, bigamous or otherwise, has the effect of revoking a will. Appellant has cited many decisions of this court which hold that a will may be revoked by implication, but makes no attempt to reconcile their facts with those of the instant case. Our examination of the opinions cited establishes that in all of them were involved acts of the *testator* performed after the execution of the will, which were, or became, incon-

sistent with the provisions of the will. None of the cases concerned acts of the beneficiary. Appellant concedes that this is so but rationalizes that appellee can cite no cases to the contrary. We find no merit to the contention as made, and are of the opinion that appellant fails in his claim that the will of Peter J. Speroni was revoked by implication.

Appellant's alternate contention is that appellee has forfeited her right to the property which passed by the will, because of her fraudulent and deceptive conduct. The will was executed two years before appellee's purported divorce from Peter and seven years before her marriage to Huddleston. It continued in effect more than a year after such marriage. Again on this issue, appellant cites no cases relative to forfeiture by the beneficiary under a will by reason of subsequent conduct which might be a moral fraud on the testator. Our attention has been called to section 175, volume 1 of Page on Wills, wherein it is stated that "if the relations of a beneficiary to the testator are such that a beneficiary owes to the testator a duty to make a full disclosure of all material facts which might reasonably affect the transaction in question, and such beneficiary fails to disclose one or more material facts, such non-disclosure renders the will invalid. Non-disclosure of this sort is something spoken of as a kind of fraud." Our reading of the text shows that this language refers to disclosures made, or to be made, before, or at the time of, the execution of the will, *i.e.*, fraud in the inducement. We find nothing in the work cited which extends the doctrine to disclosures of facts or conduct occurring after the will is executed. Nor has our search of the authorities disclosed any precedent to support the claim that appellee forfeited her rights under the will. We conclude, therefore, that the trial court was correct in holding that the will of Peter J. Speroni remained in effect and was operative to pass his estate to appellee. Such result precludes the granting of such relief as plaintiffs sought as Peter's heirs-at-law.

With regard to appellee's right to the proceeds of the insurance policy, we find that the insurance company waived any defense or contest on its part by paying the money due under the policy into court. Appellant's brief devotes but little argument to this contention and again cites no authority in its support. Assuming that appellee did secure a divorce from Peter, it is urged that she had no insurable interest when the policy was taken out. While we find no exactly similar case in this jurisdiction, we find the rule to be that where the insurer recognizes the policy as valid and pays into court the proceeds thereof, a third person, such as the personal representative of the insured, cannot take advantage of the want of insurable interest. (29 Am. Jur. sec. 320, p. 292.) We conclude that whether appellee secured a divorce or not, appellant may not advantageously claim that she was ineffectually named as beneficiary of Peter's life insurance policy. Whether or not the parties were divorced or married, the undenied business relation of the two may have been the basis for an insurable interest between them, particularly at the time the policy was taken out. A policy is not avoided by the cessation of the insurable interest unless such be the necessary effect by the provisions of the policy itself. (*Conn. Mut. Life Ins. Co. v. Schaefer,* 94 U.S. 457, 24 L. ed. 251.) Appellee did not lose her right to collect or receive the insurance, even if she did divorce her husband.

Lastly, appellant alleges error on the trial court's action in not compelling appellee to be present for an examination at a hearing in 1949. Appellant's counsel advised the court that they wanted to examine her on issues not included in the 1947 hearing. Counsel for appellee took the position, by oral statement made to the trial court, that she had appeared in 1947 for adverse examination and was under no obligation to again appear, and that, if plaintiffs desired, they could obtain her examination by deposition at her location in a hospital in the State of Missouri. The record

shows no motion and affidavit showing what evidence was intended to be elicited from appellee, or that it could not have been obtained from her on the two previous examinations; or wherein it was necessary that she be compelled to be present. Under such circumstances, there is nothing before us to consider on the issue of whether the court abused its discretion in ruling against plaintiffs on their request.

We are of the opinion that the circuit court was correct in dismissing the complaint for want of equity and its decree in so doing is affirmed. *Decree affirmed.*