[No. 55578-2-I. Division One. August 7, 2006.]

*In the Matter of the Estate of* JAMES ELIO D'AGOSTO.

---

[36] We note that in all other respects, Pittman's trial counsel vigorously pursued a defense and advocated for his client.

*Mary S. Peterson* (of *Miller Nash, L.L.P.*); *Robert A. Casteel* and *Kimberlee W. Olsen* (of *Luke, Casteel & Olsen*), for appellants.

*Max E. Spring* and *Gerald M. Hahn*, for respondent.

¶1 Cox, J. — This is a case of first impression deciding whether an insurable interest in the life of another must continue to exist after the making of an insurance contract to entitle the named beneficiaries to policy proceeds upon the death of the insured. We hold that former RCW 48-

.18.030 (1992) codifies the majority common law rule that termination of a valid insurable interest after the making of the policy does not affect a beneficiary's right to receive policy proceeds. There being no basis to deny policy proceeds to the named beneficiaries in this case, we reverse.

¶2 Clifford Burns, Terrence McKeon, and James D'Agosto formed Sound Propeller Services, Inc., in 1990. They signed a stockholder agreement dated November 1993. Pursuant to the terms of the agreement, each stockholder procured life insurance policies on the lives of the other two stockholders. Each policy named the remaining two stockholders as beneficiaries. No alternate beneficiary was named. The named beneficiaries of each policy were also the owners of that policy. All three stockholders were also directors and employees of the company.

¶3 In August 2003, Burns and McKeon terminated D'Agosto's employment with Sound Propeller for reasons not pertinent to this appeal. D'Agosto threatened to sue for wrongful termination. After several months of negotiations, the parties reached a settlement.

¶4 The parties agreed that Burns and McKeon would purchase D'Agosto's stock for $353,117, its fair market value, pursuant to the termination provisions of the stockholder agreement. The purchase was evidenced by a $20,000 down payment and a promissory note to D'Agosto for payment of the $333,117 deferred balance. The note was secured by a pledge of the stock. The parties reduced the settlement to writing and disbursed funds in accordance with its terms.

¶5 Less than six months later, D'Agosto died unexpectedly. His estate (Estate) commenced this probate proceeding. Both the personal representative of D'Agosto's estate as well as Burns and McKeon, as owners and beneficiaries of the life insurance policies on D'Agosto, submitted claims for the policies proceeds. United Mutual of Omaha Life Insurance Company, the insurer, interpleaded the funds in federal court.

¶6 The Estate obtained orders in this proceeding for Burns, McKeon, and United Mutual to appear and show cause why the Estate should not receive the insurance proceeds. No one argues that the federal court retained jurisdiction to decide this issue.

¶7 Both sides moved for summary judgment. The trial court granted the Estate's motion and denied Burns and McKeon's cross-motion for summary judgment. The court ordered the life insurance proceeds, plus interest, paid to the Estate. From the insurance proceeds, it also ordered that Sound Propeller be reimbursed for the $5,059.50 in insurance premiums it had paid to Mutual of Omaha for the policies. In addition, the trial court entered judgment against Burns and McKeon for attorney fees.

¶8 Burns and McKeon appeal.

## INSURABLE INTEREST

¶9 Burns and McKeon contend that former RCW 48-.18.030(3), the statute dealing with an insurable interest on the life of another, establishes that their interests in the life of D'Agosto were valid at the inception of the policies on his life. They further contend that the later events in this case do not terminate their rights to receive the policies' proceeds as beneficiaries under the policies. We agree with both arguments.

¶10 Summary judgment is appropriate if the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[1]

¶11 There are no disputed material factual issues here. Thus, we must decide whether the Estate or Burns and McKeon were entitled to judgment as a matter of law.

¶12 "The phrase 'insurable interest' . . . is usually employed in the context of procuring insurance . . . to re-

---

[1] CR 56(c).

strict the class of persons who may be named beneficiaries when one person procures an insurance contract on the life of another."[2] At common law, it was recognized that insurance contracts upon matters in which the insured party had no interest were wagering policies void as against public policy.[3] With respect to life insurance upon the life of another without interest in that life on the part of the insured, the objection " 'was not the temptation to murder but the fact that such wagers came to be regarded as a mischievous kind of gaming.' "[4]

¶13 This common law rule that an insurable interest is required at the making of a policy was codified by the Washington Legislature in 1947. Former RCW 48.18.030(1) (1992) provides:

> Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person. But *no person shall procure or cause to be procured any insurance contract upon the life* or body *of another individual unless the benefits under such contract are payable* to the individual insured or his personal representatives, or *to a person having, at the time when such contract was made, an insurable interest in the individual insured.*[5]

¶14 The plain words of this statute make clear that the relevant time for purposes of determining an insurable interest is "at the time when [the insurance] contract [is] made." To argue that another time is relevant would require us to add wording to the plain words of the statute. We decline to do so. We conclude that this statute codifies the majority general rule that an insurable interest in the

---

[2] *Wash. State Pub. Employees' Bd. v. Cook*, 88 Wn.2d 200, 203, 559 P.2d 991 (1977).

[3] *Herman v. Provident Mut. Life Ins. Co. of Phila.*, 886 F.2d 529, 533 (2d Cir. 1989).

[4] *Id.* (quoting *Grigsby v. Russell*, 222 U.S. 149, 156, 32 S. Ct. 58, 56 L. Ed. 133 (1911) (Holmes, J.)); *accord Cook*, 88 Wn.2d at 204 (noting that the major reason for restricting beneficiaries to those having an insurable interest is to prevent wagering).

[5] Former RCW 48.18.030(1) (1992) (emphasis added).

life of another must exist at the time an insurance contract is made.

¶15 Here, Burns and McKeon had an insurable interest in the life of D'Agosto at the making of the insurance contracts on the latter's life. This is so by virtue of the express terms of the stockholder agreement all three parties signed and the provisions of statutory authority expressly permitting this type of transaction.

¶16 Specifically, former RCW 48.18.030(3) provides in part as follows:

"Insurable interest" as used in this section . . . includes *only* interests as follows:

(a) In the case of individuals related closely by blood or by law, a substantial interest engendered by love and affection; and

(b) In the case of other persons, a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured.

(c) *An individual [who is] party to a contract or option for the purchase or sale* of an interest in a business partnership or firm, or *of shares of stock of a close corporation or of an interest in such shares, has an insurable interest in the life of each individual party to such contract* and for the purposes of such contract only, in addition to any insurable interest which may otherwise exist as to the life of such individual.[6]

¶17 We next consider whether events subsequent to the making of the insurance contracts in this case divested Burns and McKeon of their rights as beneficiaries to insurance proceeds on D'Agosto's death.

¶18 Although an insurable interest in another's life must exist at the inception of the policy in order to create a valid contract, that interest need not continue

---

6 (Emphasis added.)

unless the policy so provides.[7] Because an aim of the law is to prevent wagering on a life in which the insured has no interest, such aim is adequately safeguarded by examining the insurance contract at its formation.[8] For example, the majority common law rule is that insurance procured pursuant to a business relationship is not affected by the termination of that relationship.[9]

¶19 Here, there is no persuasive argument that the insurance contracts were invalid when made. Moreover, there is nothing in the contracts to support an argument that the right of the named beneficiaries to receive insurance proceeds is affected by termination of D'Agosto's relationship either with Sound Propeller or the other stockholders. Lastly, there is nothing in the insurance contracts to support an argument that sale of his stock to the two other stockholders affected their rights to receive insurance proceeds on his death.

¶20 The Estate argues that the then-existing insurable interests in the policies on D'Agosto's life terminated when the purpose of the policies terminated: when the inter vivos stock purchase by the parties was consummated at closing. This argument is based on the Estate's reading of former RCW 48.18.030(3)(c). We conclude that the Estate's reading of that statute is incorrect.

¶21 Former RCW 48.18.030(3)(c) provides:

An individual [who is] party to a contract or option for the purchase or sale of an interest in a business partnership or

---

[7] See Conn. Mut. Life Ins. Co. v. Schaefer, 94 U.S. 457, 461, 24 L. Ed. 251 (1877) ("[A] policy taken out in good faith, and valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary effect of the provisions of the policy itself.").

[8] Herman, 886 F.2d at 533 (citing Edwin W. Patterson, Insurable Interest in Life, 18 COL. L. REV. 381, 415 (1918)).

[9] See J.H. Cooper, Annotation, Insurable Interest of Partner or Partnership in Life of Partner, 70 A.L.R.2d 577, 582 (1960) ("A majority of the courts considering the question have held that if a partner or a partnership has an insurable interest in the life of a partner at the inception of the policy, the termination of the partnership prior to the death of the insured does not effect [sic] the validity or enforceability of the policy."); accord 3 GEORGE COUCH ET AL., COUCH ON INSURANCE 2d § 43:16 (rev. ed. 1982)).

firm, or of shares of stock of a close corporation or of an interest in such shares, has an insurable interest in the life of each individual party to such contract and for the purposes of such contract only, in addition to any insurable interest which may otherwise exist as to the life of such individual.

¶22 Focusing on the phrase *"and for the purposes of such contract only,"* the Estate argues that the sale of the stock in this case terminated the insurable interests of Burns and McKeon in the insurance policies because there was no longer any purpose for those contracts. This argument is unpersuasive.

¶23 The plain language of the statute defines "insurable interest" in sections (3)(a) through (3)(c) of former RCW 48.18.030. As we have explained, former RCW 48.18.030(1) identifies the making of the contract as the relevant time for purposes of determining when an insurable interest exists. Nowhere in this statute is there any wording stating that such interest terminates on the happening of a subsequent event. More importantly, nowhere does the statute state that the termination of an insurable interest that is effective when made affects, in any way, the obligation under an insurance contract to pay the policy proceeds to the named beneficiaries. Harmonizing the provisions of former RCW 48.18.030(1) and former RCW 48.18.030(3)(a)-(c), the only rational result is to conclude that the phrase on which the Estate relies does nothing to modify policy provisions that require payment of proceeds to beneficiaries with an insurable interest in the life of another at the time of the making of the contract. Accordingly, we reject the Estate's argument as unpersuasive.

¶24 We note that the Estate does not argue that it was named as either a primary or an alternate beneficiary under the policy. It was not. Thus, it is difficult to see how it can pursue a claim for the payment of proceeds of the policies, in any event.

¶25 The Estate cites *Mearns v. Scharbach,*[10] which upheld the constitutionality of RCW 11.07.010, the statute

---

[10] 103 Wn. App. 498, 12 P.3d 1048 (2000), *review denied,* 143 Wn.2d 1011 (2001).

specifically terminating the insurable interest of a spouse upon dissolution of marriage. The Estate contends that a similar "bright line rule" was established by the statute at issue here. This case is distinguishable. Here, there is no similar special legislation terminating an insurable interest upon a subsequent event.

¶26 In addition, the Estate relies for support on the rationale in *Ruth v. Flynn*,[11] a 1914 Colorado decision. There, as here, business partners had cross-purchased life insurance policies. However, the partnership subsequently dissolved and one partner bought out the other. The partner who had been bought out died less than a year later and both his estate and his former partner claimed the life insurance proceeds. The Colorado court ruled in Flynn's estate's favor, finding that, at the time of death, the former partner had no insurable interest in the deceased partner.[12]

¶27 The rationale for *Flynn* is not persuasive here for two reasons. First, it represents the minority view, and the Estate presents no compelling argument why Washington should break with a long-standing majority rule. Second, the *Flynn* court was not construing a statute such as the one at issue here. Therefore, *Flynn* is of little help here, where our task is primarily one of statutory construction.

■ ¶28 We hold that both the plain language of the statute before us and the common law majority rule support the view that the termination of an insurable interest that is valid at the making of the insurance contract does not affect the requirement to pay the policies' named beneficiaries.

## STANDING

■ ¶29 Burns and McKeon also argue that the Estate lacks standing to challenge their insurable interest in D'Agosto's life. We agree.

[11] 26 Colo. App. 171, 142 P. 194 (1914).

[12] 142 P. at 198.

¶30 The majority rule is that:

the insurer alone may question the eligibility of beneficiaries, and a contesting beneficiary may not raise such lack of relationship or other ineligibility. . . . Likewise, the majority rule is to the effect that only the insurer may raise the defense of lack of insurable interest, and the displaced beneficiary may not defeat a change upon this ground.[13]

¶31 In Washington, former RCW 48.18.030(2) creates a statutory exception to the general rule, permitting an insured or his or her estate to challenge payment in certain limited circumstances:

If the beneficiary, assignee or other payee under *any contract made in violation of this section* receives from the insurer any benefits . . . accruing upon the death, disablement or injury of the individual insured, the individual insured or his executor or administrator . . . may maintain an action to recover such benefits from the person so receiving them.[14]

¶32 The plain words of the statute condition standing on the making of any contract "in violation" of the statute. But there is no such violation in this case.

¶33 The Estate cites *In re Al Zuni Trading, Inc.*,[15] to support its argument that it has standing. But the case stands in opposition to the point the Estate argues.

¶34 *Al Zuni* cites the general rule: an insurer has standing, no one else.[16] However, the Ninth Circuit held that an Arizona statute modified the general rule. The statute at

---

[13] 2A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 1061, at 101-03 (1966) (citing, *e.g.*, *Keckley v. Coshocton Glass Co.*, 86 Ohio St. 213, 99 N.E. 299, 301 (1912) (when the insurer has recognized the validity of the policy by paying the amount of the policy to the beneficiary or into court, other parties claiming an interest in the fund cannot object on the ground that the beneficiary named in the policy had no insurable interest); *Speroni v. Speroni*, 406 Ill. 28, 92 N.E.2d 63, 66 (1950) ("[W]here the insurer recognizes the policy as valid and pays into court the proceeds thereof, a third person, such as the personal representative of the insured, cannot take advantage of the want of insurable interest.")).

[14] (Emphasis added.)

[15] 947 F.2d 1403 (9th Cir. 1991).

[16] *Id.* at 1404 (citing 3 GEORGE COUCH ET AL., COUCH ON INSURANCE 2d § 24:6, at 22 (rev. ed. 1984)).

issue, which is very similar to the Washington statute, permitted the insured's estate to bring a challenge *where the policy had been "issued in the absence of an insurable interest."*[17] Of course, to have issued a policy to one without an insurable interest would be in violation of the statute. But Burns and McKeon had insurable interests at the time of the making of the policies here.

## SURRENDER AND SATISFACTION OF CLAIMS

¶35 Finally, Burns and McKeon contend that the Estate is barred from claiming an interest in the insurance proceeds by the mutual release agreement and by the doctrine of accord and satisfaction. Because these arguments are unnecessary to the resolution of this case, we decline to reach them.

## ATTORNEY FEES AND OTHER RELIEF

¶36 Burns and McKeon argue that the trial court erred in ordering them to pay the Estate's attorney fees below. Specifically, they maintain that under RCW 11.96A.150, fees should be disallowed in situations such as this one, where the issue being litigated is a novel or difficult one. In the alternative, they argue that if any fees are to be awarded, they should be paid from the proceeds of the policy. They do not request fees on appeal.

¶37 The Estate requests attorney fees on appeal under RAP 18.1 and RCW 11.96A.150.

¶38 Courts may, in their discretion, award costs and reasonable attorney fees in estate proceedings.[18] The award may be paid by a party from the estate's assets or from a nonprobate asset that is the subject of the proceedings.[19]

---

[17] *Id.* (emphasis added).

[18] RCW 11.96A.150.

[19] RCW 11.96A.150(1)(a)-(c).

¶39 In *Mearns v. Scharbach*,[20] Division Three denied a request for attorney fees and costs against the decedent's former spouse that were incurred by the decedent's children in litigating difficult questions involving the operation and constitutionality of a former version of RCW 11.07.010. In similar circumstances, the court in *In re Estate of Burks*[21] declined to award fees under RCW 11.96A.150 because of the unique issues in the case.[22]

¶40 Here, there are novel issues of statutory construction. An award of fees to either party is unwarranted. We reverse the award of fees below and deny the Estate's request on appeal for fees.

¶41 In addition, we reverse the court's reimbursement of insurance premiums to Sound Propeller. Burns and McKeon are therefore entitled to the $200,000 minus the amount of reimbursement already received by Sound Propeller.

¶42 To summarize, we reverse the summary judgment and the fee award in favor of the Estate. We also reverse the reimbursement order. We deny fees on appeal to both parties.

APPELWICK, C.J., and AGID, J., concur.

Review denied at 160 Wn.2d 1016 (2007).

---

[20] 103 Wn. App. at 514-15.

[21] 124 Wn. App. 327, 100 P.3d 328 (2004), *review denied,* 154 Wn.2d 1029 (2005).

[22] 124 Wn. App. at 333 (citing *Mearns,* 103 Wn. App. 498).