PITTMAN, Judge.
Misty Ann Barton, as administratrix of the estate of Benjamin H. Miller, Jr., deceased, appeals from a judgment of the Bessemer Division of the Jefferson Circuit Court dismissing her negligence claim against Liberty National Life Insurance Company, We reverse and remand.
Barton, as administratrix of the estate of Benjamin H. Miller, Jr., deceased, filed a complaint on July 30, 2013, against Liberty National, Leanne Jean Miller, and a fictitiously named defendant. Barton alleged, among other things, that she had been appointed as the administratrix of the estate of Benjamin H. Miller, Jr. (“Benjamin Jr.”); that Benjamin Jr. was the son of Benjamin H. Miller, Sr. (“Benjamin Sr.”), who died on January 15, 2011; that Benjamin Sr. had purchased an insurance policy on the life of Benjamin Jr. (“the policy”) while both Benjamin Sr. and Benjamin Jr. *481 were still alive and that, at that time, Nona June Miller had been named as the beneficiary of the policy; that, during his lifetime, Benjamin Sr. had changed the beneficiary of the policy to himself; and that Benjamin Sr. had predeceased Benjamin Jr., who had died on July 30, 2011. Barton asserted that, pursuant to the terms of the policy, the proceeds of any benefits paid pursuant to the policy were payable to the estate of Benjamin Jr. Barton further asserted that, when Benjamin Sr. died, his widow, Leanne, had been granted letters of administration of Benjamin Sr.’s estate; that, during the administration of that estate, Leanne had requested that the policy be altered to make her the beneficiary of the proceeds of the policy; and that Liberty National had granted that request and had paid the proceeds of the policy to Leanne. Barton asserted in the complaint that, because Leanne had no insurable interest in Benjamin Jr., her stepson, Leanne’s naming herself as beneficiary of the policy was ineffective and void. In the complaint, Barton asserted that Leanne had made a claim for benefits under the policy following the death of Benjamin Jr.; that Liberty National had been negligent in failing to determine, at the time Leanne requested that she be named beneficiary, that Leanne had no insurable interest in Benjamin Jr.; that, as a proximate consequence of the negligence and wrongful conduct of Liberty National, Benjamin Jr.’s estate had been deprived of those benefits; and that Leanne’s actions had resulted in her being unjustly enriched in an amount equal to the insurance proceeds that had been paid to her by Liberty National. Barton sought a judgment in the amount of $25,000.
On October 15, 2013, Liberty National filed a motion, pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss Barton’s claim against it. Leanne filed an answer to the complaint, asserting a number of affirmative defenses. Barton filed a response to Liberty National’s motion to .dismiss. On December 15, 2013, the trial court entered an order granting Liberty National’s motion to dismiss. Barton filed a motion seeking reconsideration of the trial court’s order; that motion was denied by the trial court. Barton filed a notice of appeal to this court. Liberty National filed a motion to dismiss Barton’s appeal; that motion was' denied. This court reinvested the trial court with jurisdiction to allow it to consider and enter, if appropriate, a Rule 54(b), Ala. R. Civ. P., certification of the December, 2013, order as a final judgment; on April 4, 2014, the trial court entered an order certifying its Decémber 15, 2013, judgment as final, pursuant to Rule 54(b).
Barton argues on appeal that the trial court erred by granting Liberty National’s motion to dismiss.
“The applicable standard of review for a Rule 12(b)(6), Ala. R. Civ. P., dismissal is set forth in Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993):
“ ‘On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed-most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not.consider whether the plaintiff will ultimately prevail, but only whether *482 she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).’
“(Emphasis added.)”
Smith v. Smith, 865 So.2d 1221, 1223-24 (Ala.Civ.App.2003) (footnote omitted).
Barton argues that Liberty National’s allowance of Leanne’s change to the beneficiary of the policy created a wager policy, which is void under Alabama law, thereby depriving Benjamin Jr.’s estate of the insurance proceeds to which it was entitled. The Alabama Supreme Court discussed wager policies in Commonwealth Life Insurance Co. v. George, 248 Ala. 649, 653-54, 28 So.2d 910, 913 (1947):
“In Helmetag’s Adm’r v. Miller, 76 Ala. 183, 52 Am. Rep. 316 [ (1884) ], in the opinion, discussing the question of insurable interest, was the observation: ‘There is no limit to the insurable interest which a man may have in his own life; but there are forcible reasons why a mere stranger should not be permitted to speculate upon the life of one whose continued existence would bring to him no expectation of possible benefit or advantage .... The reason of the law which vitiates wager policies, is the pecuniary interest which the holder has in procuring the death of the subject of insurance, thus opening a wide door by which a constant temptation is created to commit for profit the most atrocious of crimes.’ ”
In its motion to dismiss, Liberty National argued that, pursuant to Ala.Code 1975, § 27-14-3, a part of the Alabama Insurance Code, Ala.Code 1975, § 27-1-1 et seq. (“the Insurance Code”), there was no requirement that Leanne have an insurable interest in the life of Benjamin Jr. at the time of the beneficiary change. Section 27-14-3 provides, in pertinent part:
“(a) Insurable interest with reference to personal insurance is an interest based upon a reasonable expectation of pecuniary advantage through the continued life, health, or bodily safety of another person and consequent loss by reason of his or her death or disability or a substantial interest engendered by love and affection in the case of individuals closely related by blood or by law.
[[Image here]]
“(f) An insurable interest shall exist at the time the contract of personal insurance becomes effective, but this requirement need not exist at the time the loss occurs.
“(g) Any personal insurance contract procured, or caused to be procured, upon another individual is void unless the benefits under the contract are payable to the individual insured, or his or her personal representative, or to a person having, at the time when the contract was made, an insurable interest in the individual insured. In the case of a void contract, the insurer shall not be liable on the contract but shall be liable to repay to the person, or persons, who have paid the premiums, all premium payments without interest.”
Liberty National asserts that § 27-14-3(f) indicates that the Alabama Legislature “did not intend to require an insurable interest to exist beyond a life insurance policy’s initial issuance.” Liberty National further asserts that the remainder of the *483 Insurance Code supports that proposition as well. For instance, Liberty National argues that Ala.Code 1975, § 27-14-4(a), also a part of the Insurance Code, which provides that “[n]o contract of insurance of property or of any interest in property, or arising from property, shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss,” illustrates that the “Legislature was aware of the distinction between the time a policy is issued and the time of loss when it drafted and enacted these laws and that it intended insurable interest for policies of personal insurance and for property insurance to be assessed at different times.” Although we agree that § 27-14-4(a) specifies that, with regard to policies insuring property, an insurable interest must exist at the time of loss, that section is not instructive regarding whether an insurable interest is required at the time of a change of beneficiary in a life-insurance policy.
Liberty National also cites Ala.Code 1975, § 27-14-21(b), a part of the Insurance Code, which provides that
“[a] policy of life insurance, taken out by the insured himself or by a person having an insurable interest in the life of the insured, in good faith may, unless the policy provides otherwise, be assigned to anyone as any other chose in action without regard to whether the assignee has an insurable interest in the life insured or not.”
We note, however, that an assignment is distinguishable from a change of beneficiary.
“The matter of change of beneficiary and assignment of policies are two separate and distinct things. An assignment is the transfer by one of his right or interest in property to another. The power to change the beneficiary is the power to appoint. Williams v. Williams, 276 Ala. 43, 158 So.2d 901 [ (1963) ]; Taylor v. Southern Bank & Trust Company, 227 Ala. 565, 151 So. 357 [ (1933) ].”
Rountree v. Frazee, 282 Ala. 142, 147, 209 So.2d 424, 427 (1968). Thus, Liberty National’s argument that § 27-14-21(b) abrogates Alabama’s caselaw speaking to wager policies, which speaks to the beneficiaries, rather than the owners, of life-insurance policies, is without merit.
Although § 27-14-21(b) is not directly applicable to the circumstances in the present case, which presents a question of a change of beneficiary rather than an assignment of the policy, we agree with Liberty National that looking to other statutes in the Insurance Code is instructive.
“The principles of statutory construction are summarized in State Farm Mutual Automobile Insurance Co. v. Motley, 909 So.2d 806 (Ala.2005):
“ . [T]he rule is well recognized that in the construction of a statute, the legislative intent is to be determined from a consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found. The intent so deduced from the whole will prevail over that of a particular part considered separately.”
“‘Blair v. Greene, 246 Ala. 28, 30, 18 So.2d 688, 689 (1944).
“ ‘ “It is well settled that when it is interpreting a statute this Court seeks to give effect to the intent of the Legislature, as determined primarily from the language of the statute itself. Beavers v. County of Walker, 645 So.2d 1365, 1376 (Ala.1994) (citing [McCall v.] McCall, 596 So.2d 2 (Ala.Civ.App.199[1])); *484 Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991). Also, our rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain .language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala.1993).”
“‘Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala.1999).
“ ‘ “ ‘When interpreting a statute, [a court] must read the statute as d whole because statutory language depends on context; [a court] will presume that the Legislature knew the meaning of words it used when it enacted the statute.’ ”
“'Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003) (quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)).’
“909 So.2d at 813-14.
“ ‘[I]f the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991).”
Hooks v. Coastal Stone Works, Inc., 164 So.3d 592, 597-98 (Ala.Civ.App.2014).
The language in § 27-14-3(f), when viewed in isolation, is susceptible to different. interpretations. Liberty National urges this court to interpret that section of the Insurance Code as allowing for a change of beneficiary, regardless of whether the proposed new beneficiary has had an insurable interest in the insured at any time. Another interpretation of § 27-14-3(f), however, is that the statute merely allows a person who has taken out an insurance policy on the life of another while he or she had an insurable interest in the insured, to still receive benefits from that policy if, at the time the loss occurs, he or she no longer has an insurable interest in the insured. Liberty National cites In re Estate of D’Agosto, 134 Wash.App. 390, 139 P.3d 1125 (2006), and In re Marriage of Bratton, 28 Cal.App.4th 791, 34 Cal.Rptr.2d 86 (1994), in support of its proposition that the former interpretation is that intended by the Alabama Legislature. In each of those cases, however, the latter interpretation finds support. In In re Estate of D'Agosto, the Court of Appeals of Washington determined that, in a case, in which three stockholders had each procured life-insurance policies on the lives of the other two stockholders but one of the stockholders had later been divested of his stock, the remaining two stockholders were still entitled to collect the insurance proceeds as beneficiaries at the time of loss although they no longer had an insurable interest in the third stockholder. 134 Wash.App. at 397, 139 P.3d at 1129. Similarly, in In re Marriage of Bratton, the Fourth District Court of Appeal of California determined that a foi-mer wife who had an insurable interest in her former husband at the time a life-insurance policy on his life had been taken out by the former wife, was able to maintain the policy on the former husband’s life although her insurable interest in him no longer existed. 28 Cal.App.4th at 794, 34 Cal.Rptr.2d at 88.
Viewing the Insurance Code as a whole, we agree with Barton that § 27-14-3(f) does not allow for the change of a beneficiary on the life-insurance policy of another when the proposed new beneficiary does not possess an insurable interest in the insured. .The language in § 27-14-3(g), that a personal insurance contract on an *485 other individual is void unless the benefits are payable to, among others, “a person having, at the time when the contract was made, an insurable interest in the individual insured,” further supports our interpretation of § 27 — 14—3(f). In the present case, Leanne did not have an insurable interest in Benjamin Jr. either when the policy was issued or at any time thereafter.
Liberty National also argues that Alabama law imposes no duty on Liberty National to determine whether an insurable interest exists after a policy is issued. Barton cites Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957), and Patrick v. Union State Bank, 681 So.2d 1364 (Ala.1996), in support of her argument that the trial court erred in dismissing her negligence claim against Liberty National. In Weldon, the Alabama Supreme Court determined that, when insurance policies had been issued to the aunt-in-law of a young child on the young child’s life, the insurance companies who had issued the policies had a duty to use reasonable care not to issue a policy of life insurance in favor of a beneficiary who has no insurable interest in the life of the insured. 267 Ala. at 185, 100 So.2d at 708. In Patrick, the Alabama Supreme Court analyzed Weldon as follows:
“In Liberty National [Life Insurance Co. v. Weldon, 267 Ala. 171, 100 So.2d 696 (1957) ], the father of a 2 ½ year-old child murdered by the child’s aunt by marriage brought a negligence action against three insurers that had issued life insurance policies on the life of the child to the aunt by marriage, who did not have an insurable interest in the life of the child. This Court characterized one of the issues presented as whether a life insurance company owes a ‘duty to use reasonable care not to issue a policy of life insurance in favor of a beneficiary who has no interest in the continuation of the life of the insured.’ 267 Ala. at 185, 100 So.2d at 708. The Court held that such a duty exists, and noted:
“ ‘Where this court has found that such policies are unreasonably dangerous to the insured because of the risk of murder and for this reason has declared such policies void, it would be an anomaly to hold that insurance companies have no duty to use reasonable care not to create a situation which may prove to be a stimulus for murder,’
“267 Ala. at 186, 100 So.2d at 708.
“While the duty imposed in Liberty National was clearly based, in part, upon the fact that such insurance policies were void as against public policy, we note that the rationale of that public policy is that the injury or harm from the issuance of such policies is foreseeable, if not likely. See Helmetag’s Adm’x v. Miller, 76 Ala. 183 (1884) (noting that ‘ “such policies, if valid, ... furnish strong temptations to the party interested to bring about, if possible, the event insured against” ’). Thus, it was foreseeable that the issuance of life insurance policies on the life of a person as to whom the beneficiary had no insurable interest was likely to provide a stimulus for murder, and, therefore, a company issuing a life insurance policy was held to owe a duty to use reasonable care to ascertain whether the intended beneficiary of the policy had an insurable interest in the life of the person to be insured.”
681 So.2d at 1370-71 (footnote omitted).
Based on the supreme court’s analysis in Weldon and Patrick, combined with our determination that the Insurance Code does not allow for a change of beneficiary to a person with no insurable interest in the insured, we conclude that the trial *486 court erred in dismissing Barton’s negligence claim against Liberty National. Viewing the allegations of Barton’s complaint in her favor, it appears that Barton could, under certain circumstances, maintain a cause of action against Liberty National for negligence. We, therefore, reverse the trial court’s dismissal of Barton’s negligence claim against Liberty National, and we remand the cause for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.