[No. 18524. Department Two. October 10, 1924.]

## LOUISE BUCKNER, *Appellant,* v. RIDGELY PROTECTIVE ASSOCIATION, *Respondents.*[1]

INSURANCE (149)—RIGHT TO PROCEEDS—CHANGE OF BENEFICIARY— INTENT—AUTHORITY OF INSURED—EVIDENCE—SUFFICIENCY. The evidence establishes the intent of an insured to change the beneficiary in his life insurance policy, where it appears that he so notified the agent, that correspondence thereon followed, his policy was returned for the purpose, and request blanks, required of him, were returned, although his signature thereon was typewritten.

SAME (149)—CHANGE OF BENEFICIARY—CONSENT OF INSURER—ENDORSEMENT ON POLICY—SUFFICIENCY. The "endorsement" of an insurance company consenting to a change of beneficiaries may be made by a stamped slip attached or pasted to the policy with the approval of the secretary of the company.

SAME (147) — BENEFICIARIES — PERSONS COMPETENT — INSURABLE INTEREST—STATUTES. Rem. Comp. Stat., § 7033, defining "insurable interest" in the life of another to include beneficiaries who have reason to expect some benefit from the continuance of the life of the insured, does not provide that every beneficiary shall have an in-

[1]Reported in 229 Pac. 313.

surable interest in such life, or prevent an insured who himself pays the premium from naming as beneficiary one who has no such insurable interest.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered November 3, 1923, upon findings in favor of the defendants, in an action on a life insurance policy. Reversed.

*Arthur L. Hooper* and *E. A. Cornelius,* for appellant.
*James Emmet Royce,* for respondents.

FULLERTON, J.—The Ridgely Protective Association is an insurance company engaged in the business of insuring members of the Independent Order of Odd Fellows against disability caused by sickness or injury, and against death caused by accident. The company has its home office at Worcester, Massachusetts. On October 22, 1917, the company issued a policy of insurance to Frederick A. Germain, a widower, for the principal sum of $2,250, payable in the case of his accidental death to Adele Germain, the minor daughter of the insured, who was then residing with her maternal grandmother in Los Angeles, California. The insured was a police officer of the city of Spokane, and met his death on July 21, 1922, by being struck by a motor truck while serving as a traffic officer of that city. The insured had personally paid the premiums upon the policy as they became due, and the policy was otherwise in good standing at the time of his death.

On the death of the insured, one Louise Buckner made claim to the insurance company as the sole beneficiary under the policy. A claim as sole beneficiary was also made to the company on behalf of the daughter of the insured. The company, while not disputing its liability, declined to determine the dispute between the claimants, and Miss Buckner thereupon brought

an action in the superior court of Spokane county against the company to recover upon the policy. The company appeared in the action, caused the daughter to be made a party defendant thereto, and, with leave of the court, paid into the registry of the court the amount of the policy, with interest and costs, and was thereupon dismissed from the action and discharged from further liability. The action was thereafter waged between Miss Buckner and the daughter. It was tried by the court sitting without a jury, and resulted in a judgment in favor of the daughter. From this judgment, the appeal before us is prosecuted.

The appellant, Buckner, rested her claim to the sum payable upon the policy on the ground that she had been substituted by the insured as the beneficiary of the policy in the place of the daughter. The evidence she was able to produce to sustain her claim is not seriously controverted—the principal question being whether the evidence is sufficient to substantiate her claim. It appears that the insurance company named had issued a number of policies to the members of the local lodge at Spokane of the order before named, the premiums upon which were payable quarterly. It had employed a collector to collect these premiums, who seems to have been the source through which Germain usually communicated to the insurance company. Some time in the early part of July, 1921, Germain, when making his quarterly payment, stated to the collector that he had lost his policy and requested that a duplicate be issued to him. The collector, on July 20, 1921, when making return to the insurance company, made the request known to the company. In compliance therewith, the company issued a duplicate policy, and forwarded it to the insured by mail to his local address in the city of Spokane.

In February, 1922, the insured told the collector that

he desired to change  the beneficiary of the policy. He
was then informed that it would be necessary to re-
turn the policy to the company with a request to that
effect.  Shortly thereafter the insured brought the pol-
icy to the collector, who, under the date of February
16, 1922, forwarded it to the company, notifying them
of the insured's request.  The company received the
policy and the collector's letter stating the desire of
the insured, on February 23, 1922, and on the same
day sent to the insured duplicate slips in the form it
used to effect a change of beneficiary under its policies,
stating in its letter accompanying the slips that it had
received the letter of the collector notifying it ''of
the change you desire made in the beneficiary named
in your contract,'' and advising him that ''before this
change can be made it will be necessary to fill out the
two slips enclosed and return them to us.''  The letter
was addressed to the insured at his local address in
Spokane.  The slips were returned to the company,
reaching its office on March 7, 1922.  The blanks in
the slips were filled out with a typewriter, and the
purported signatures of the insured thereon were
written in the same manner.  The record fails to show
whether any communication accompanied the return
of the slips.  The secretary of the insurance company,
the only officer of the company whose testimony ap-
pears in the record, testified that he had no personal
knowledge of the matter; explaining his lack of knowl-
edge by saying that requests for a change of bene-
ficiary in policies were routine matters, attended to
by the clerks of the company without submission to
him unless the request contained something which the
clerk giving it attention deemed unusual or required
further explanation.  The slips containing the request
were stamped with the approval of the secretary of the
company, one of them pasted on the policy, and on the

day following the policy, with the request and approval
so attached, was forwarded to the insured at Spokane.
The slip contained the request that the beneficiary
named in the policy be changed from the daughter of
the insured to the appellant, Louise Buckner.

The slip had written thereon the local address of
the appellant, and the letter returning the policy was
addressed to the insured at this local address, not at
his home address of which the company had knowledge
and to which it had theretofore addressed all of its
communications to him. It was shown, however, that
the envelope containing the policy was delivered to
the insured unopened, and that it was found after his
death among others of his private papers in a locked
desk at his home, the key to which was taken from his
person immediately following his death. At the time
it was so found, the envelope had been opened, indicat-
ing that its contents had been examined by the in-
sured.

There was evidence of statements made by the in-
sured a short time preceding his death to the effect
that he had changed the beneficiary of his policy from
his daughter to the appellant, and the appellant was
permitted to testify that a marriage engagement ex-
isted between herself and the insured.

The policy contained a provision to the effect that
consent of the beneficiary named therein should not
be necessary to a change of beneficiary by the insured,
but also provided that no change in any of the pro-
visions of the policy should be valid unless approved
in writing by the president or secretary of the com-
pany "endorsed" thereon.

The trial court seems to have based its judgment on
three distinct grounds, first, that the evidence failed
to show that the attempted change in the beneficiary
was authorized by the insured; second, that if so

authorized, it was not effected because not made in the manner provided in the policy; and third, that the appellant was not a person competent to be named as a beneficiary of the policy.

With none of these conclusions have we been able to agree. The evidence, while largely circumstantial, shows clearly to our minds that the insured intended to and did make a change in the beneficiary of the policy. The circumstances which can be said to point to a contrary conclusion are that the name of the insured on the request blanks was written with a typewriter, that they were not returned to the company through the collector, the usual source through which the insured communicated with the company, and that the envelope returning the policy was not addressed to the local address of the insured. But these circumstances can hardly outweigh the other circumstances disclosed. At best, they point to the possibility of fraud. But they are just as capable of an honest interpretation, and the record otherwise gives no countenance to the conclusion that the insured had been imposed upon. It was not necessary to the validity of the request blanks that they be signed by the insured with his own hand. He was at liberty to adopt any form of signature he so chose. The question is always one of intent, and the cases are uniform in holding that a printed or stamped signature, or a signature written by another than the person to be bound, is valid and binding if the person to be bound directs it to be so written, or accepts it as his own. See note to the case of *Metropolitan Discount Co. v. Davis,* 170 Pac. (Okl.) 707, 7 A. L. R. 670.

While we seemingly have no case directly upon the question, the principle is recognized in the following: *Bell v. Waudby,* 4 Wash. 743, 31 Pac. 18; *Horr v. Hollis,* 20 Wash. 424, 55 Pac. 565; *Tumwater v. Hardt,* 28

Wash. 684, 69 Pac. 378, 92 Am. St. 901; *Yakima Valley Bank v. McAllister,* 37 Wash. 566, 79 Pac. 1119, 107 Am. St. 823, 1 L. R. A. (N. S.) 1075; *Degginger v. Martin,* 48 Wash. 1, 92 Pac. 674.

An illustrative case on the general question is *Schmidt v. Iowa Knights of Pythias Ins. Ass'n,* 82 Iowa 304, 47 N. W. 1032. In that case the insured (Schmidt) had been twice married. He had a son, Peter, by his first marriage, and a son, John, by the second. He had taken out a policy in which Peter was named as the beneficiary, and on his death bed he sought to make the mother of John and John the beneficiaries in Peter's stead. The acts done to constitute the change, and the opinion of the court as to their effect, are stated in the following language:

"The material question to be determined in this case is whether what was done by Schmidt, and under his direction, should be given the effect of a change of the beneficiary named in the certificate. Three days before his death, Schmidt sent for Judge Wilber, who resided in Dakota City, Nebraska, to transact business for him. Judge Wilber attended as requested, and drew certain deeds which Schmidt executed. After that was done he spoke of the certificate in suit, said it was locked up in a safe, but, if it could be procured, he would like to make a transfer of it. An attempt to obtain the certificate at that time failed. Two days later, Alex Fellner, a soliciting agent, who resided in Sioux City, and through whose influence Schmidt became a member of the defendant association, visited him. They conversed in regard to the beneficiary of the certificate. Schmidt stated that he wished it to be so changed that his wife, Annie, and his son, John, should be the beneficiaries. It was finally arranged that the certificate should be sent to Sioux City the next day, and that the necessary indorsement thereon should be made by T. J. Wing, who was the presiding officer of the lodge to which Schmidt belonged. The certificate was brought to Sioux City on the next day,

and the indorsement was made by Wing, according to the arrangement made the previous day. Wing did not act by virtue of any writing made by Schmidt, nor by any verbal authority given by him in person, but by directions communicated by a person to whom Schmidt had given them. But we are satisfied that what Wing did was done at the request and by the direction of Schmidt, and, that being true, his direction and wish should be given effect, although not expressed in writing. It is perhaps true that he had the physical power to sign the indorsement had it been presented to him, or to have signed written authority to Wing to do so, but, although it might have been a better plan, he was not bound to adopt it. He showed his intent clearly by sending the certificate to Wing with verbal instructions to make the indorsement necessary to effect the change of beneficiaries which he desired. His intentions and the authority he gave having been ascertained, the acts of his agent in carrying them into effect should be enforced."

The second objection does not, in our opinion, require extended discussion. While the policy provides that changes may not be made therein without the consent of the company in writing endorsed thereon, and while it is true that the technical definition of the term "endorse" is to write upon the back of a paper or document, it is generally held that the place where the endorsement is put is not material, if the signer intended it as an endorsement. *Haines v. Dubois,* 30 N. J. Law 259. It may be written on the face of the instrument, *Shain v. Sullivan,* 106 Cal. 208, 39 Pac. 606, or, as was done in this instance, upon a separate piece of paper and attached to the instrument. *Richards v. Warring,* 39 Barb. (N. Y.) 42; *Cowdery v. Johnson,* 60 Vt. 595.

The argument that the appellant was not a person competent to be named as the beneficiary of the insured is founded in part on the state insurance code. The section pointed out as bearing upon the question

is the section defining the various terms used in the code. (Rem. Comp. Stat., § 7033) [P. C. § 2909]. Insurable interest in the life of another is therein defined to exist "when the beneficiary, because of relationship, either pecuniary or from ties of blood or marriage, has reason to expect some benefit from the continuance of the life of the insured." The argument is that the appellant has not these qualifications, and hence cannot become a beneficiary of the insured. But we think the argument mistakes the meaning of the statute. The statute does no more than define what constitutes an insurable interest. It does not provide, nor purport to provide, that every beneficiary shall have an insurable interest in the life of the person insured, but provides only what shall constitute such an interest where an interest is necessary. Stated in another way, the statute does change the general rules of law governing the instances when and when not a person may be the beneficiary of an insurance policy issued on the life of another. It must follow, therefore, that the statute is without application unless it is to be held that the appellant is not competent to become a beneficiary under the policy in question unless she has an insurable interest in the life of the insured.

*But it is not the rule* that one to be competent as a beneficiary of an insurance policy issued on the life of another must in every instance, have an insurable interest in the life of that other. If, to illustrate, one person, of his own volition and at his own cost, takes out an insurance policy on the life of another payable to himself, he must have an insurable interest in that other, else the contract is a mere wager and void as against public policy. But a person always has an insurable interest in his own life and may himself insure it for the benefit of any person he sees fit, regard-

less of the question whether the beneficiary named has or has not an insurable interest in his life. These principles, in so far as we are advised, are sustained by all of the authorities. It is not, however, necessary to collect them here. Sufficient to show the general trend can be found in Ruling Case Law under the title "Insurance," at paragraphs 96 and 97.

Our conclusion is that the insured did change the beneficiary of his policy from his daughter to the appellant, and that there is no legal reason why the change is not valid. The judgment entered is reversed, and the cause remanded with instructions to enter a judgment for the appellant.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.