[No. 24687. Department Two. November 17, 1933.]

Mrs. MARY LEVAS, *Respondent*, v. METROPOLITAN LIFE
INSURANCE COMPANY *et al., Defendants*, NICK
CARRAS, *as Administrator, Appellant.*[1]

*Ryan, Desmond & Ryan, Howard W. Sanders,* and
*Stephen E. Katopothis,* for appellant.

*C. D. Liliopoulos,* for respondent.

GERAGHTY, J.—This is an action brought by plaintiff,
Mary Levas, against the Metropolitan Life Insurance
Company to recover the proceeds of a group insurance
certificate issued by the insurance company to Bill
Demos. The insurance company appeared in the ac-
tion, tendered the proceeds of the certificate for de-
posit in the registry of the court, and requested an
order bringing in as further defendants Mary Argyro-
poulos, a niece of the deceased, and Nick Carras, who
had been appointed administrator of the estate of

[1]Reported in 26 P. (2d) 1032.

Demos. This was done, and the insurance company was dismissed.

The action as between the remaining parties was tried to the court without a jury. At the conclusion of the trial, the court made findings of fact and conclusions of law favorable to the plaintiff, and judgment in accordance therewith was entered. Defendant Carras, as administrator, appeals.

Demos, an unmarried man, was renting a flat from Mrs. Mary Levas, in Seattle. Mrs. Levas lived, with her husband and four children, at 151 Tenth avenue north. The flat rented from her by Demos was at 161 Tenth avenue north. Notwithstanding some confusion in the testimony of Mrs. Levas as to the number of her residence, it is clear that the number here given is correct. Demos, being out of work, made some effort to secure a job with the Seattle Gas Company, but found the policy of the company was to employ only married men. Whether from friendship or from self-interest in having a paying tenant, Mrs. Levas took the matter of a job in hand and went to see Morris G. Lane, who was in charge of employment for the gas company. She told him an appealing story as to how her husband, Bill Demos, was out of work, that they had several children, were practically out of food, and in dire need. Her appeal to Lane was effective. He told her to send her husband to the plant next day. Demos reported at the plant, and was assigned to work under Thomas Rock, a foreman.

Later, Demos brought Mrs. Levas with him to call on Rock, the foreman, at his home, and introduced her as his wife. They called together on Mr. Rock at his home once, and Mrs. Levas called several times alone. She was introduced by Mr. Rock to his wife as Mrs. Demos. Rock testified that, in view of the company's rule as to the employment of only married men, he

assumed, when Mr. Lane sent Demos to work, that he was married. This impression was confirmed by meeting his supposed wife under the circumstances mentioned.

Demos commenced working for the company in June, 1928. In the course of the next year, the gas company became a subsidiary of the Central Public Service Corporation. This corporation carried group insurance for its employees in the Metropolitan Life Insurance Company, and on December 23, 1929, Demos made application for participation in this group insurance. His application blank was filled out by Rock, his foreman, who filled in the information given by Demos. Demos gave his status as a married man and his wife's name Mary Demos, whom he named as beneficiary. He gave 151 Tenth avenue north as the residence of the beneficiary. This, as we have said, was the number of the residence of Mrs. Levas. Following the execution of this application, a certificate for two thousand dollars was issued to Demos. Mary Demos was named in the application as the wife and beneficiary; in the certificate she is named the beneficiary, but is not designated as wife. Demos died December 13, 1931.

The certificate of insurance contained this provision:

"If there be no designated beneficiary at the time when any insurance shall be payable on account of the employee named on the first page hereof, then the proceeds shall be paid as follows: To the wife or husband, if living, of such employee; if not living, to the children of such employee who survive such employee, equally; if none survive, to the father and the mother of such employee equally, or to the survivor; if neither survive such employee, to the estate of such employee."

Appellant takes the position that no beneficiary is named in the certificate, since there is no such person

as Mary Demos; that the use of the name in the certificate is a mere fiction; and that, since Demos left no wife or children or father or mother, the proceeds of the policy belong to appellant as administrator. He argues that Demos was under no obligation to Mrs. Levas, and had no reason or inducement to confer a favor upon her; that he took the insurance under the belief that it was necessary to do so to hold his job, and that, having passed himself upon his employer as a married man, he named a fictitious wife to save appearances.

It may be that he thought more of his job than of Mrs. Levas, and that he took insurance because he believed it would help him hold the job, but this only goes to the motive; it does not alter the fact. Demos did take out a policy of insurance and paid for it. He named as his beneficiary a Mary Demos, whom he called his wife. No issue of fraud upon the company is involved. It has paid the money into court. The issue before the court is: Whom, if anyone, did he intend as his beneficiary under the designation of Mary Demos?

We think the finding of the lower court as to the identity of the beneficiary as the respondent is fully sustained by the evidence. The Mary Demos named in the certificate as beneficiary is identified as the supposed wife in the application. This supposed wife is identified as Mary Levas by the address given in the application. Mary Levas was known as Mrs. Demos to Thomas Rock, the foreman who filled in the application for the insured, and to others connected with the gas company. The identification, so far as the certificate was concerned, of Mrs. Levas as the wife, Mary Demos, mentioned in the application, was as complete as if she had been present at the signing of the application and Demos had said to Thomas

Rock: "This is my wife, whom I want to make the beneficiary." Demos had a right to name whomsoever he chose as beneficiary, by whatever name he chose to adopt, so long as in doing so no fraud was committed.

It is not necessary that the beneficiary have an insurable interest in the life of the insured.

"It is the settled law of this country that a person has a right to insure his own life and have the money made payable to any person whom he may desire, whether such beneficiary has an insurable interest in his life or not." *Mutual Life Ins. Co. v. Cummings,* 66 Ore. 272, 126 Pac. 982, 133 Pac. 1169, Ann. Cas. 1915B, 535.

Quoting further from the same case:

"It may have been the insured's duty to provide for his wife and child and to have made no provision for the woman with whom he lived illegally. We do not doubt his duty in the premises, but this duty is of imperfect obligation, and this court has no power to make a contract for him or to change one he has made. By the contract which he made with the insurance company, the proceeds of the policy were to be paid, at his death, to the appellant, Evelyn M. Cummings. We have no power to decree that, when he stipulated that this money should be paid to Evelyn M., his wife, he meant that it should be paid to Sophia J., his wife. It is true that Evelyn M. was not his lawful wife, but she was his reputed wife and was generally so known. It is our duty to construe the policy so as to effectuate the intention of the insured and the company that issued the policy. It is morally certain that the parties to this contract intended that the proceeds of the policy should be paid to Evelyn M. and not to Sophia J."

To the same effect is *Metropolitan Life Ins. Co. v. Olsen,* 81 N. H. 143, 123 Atl. 576, 32 A. L. R. 1472:

"The application in each policy is upon a printed form supplied by the insurer, and that for each policy contains the following, the words italicized being inserted with a pen: 'Whom do you designate as bene-

ficiary to receive proceeds in event of your death?
(Print) *Florence Mayo*. Occupation. *Home*. Rela-
tionship of proposed beneficiary. *Wife*. Age *38*, P. O.
Address *56 No. State St., Concord, N. H.'*

"Florence Mayo was not the wife of the assured at
the time of the applications. She had been married to
one Olsen, from whom she secured a divorce in 1915.
The assured had a wife whom he married in 1908 but
with whom he had not lived since 1910. Since 1910 the
assured and Florence had lived together as husband
and wife under a mutual agreement to marry when
they could legally do so, and introduced each other to
their friends as husband and wife. The only ground
upon which the insurer asks the cancelation of the
policies is the statement in the application for each
as to the relationship to the assured of the proposed
beneficiary. The statement is descriptive of and tends
to identify the person whom the assured wished made
beneficiary. That he intended the proceeds on his
death should be paid to Florence, then known in the
community as his wife, is found to be the fact. For
the purpose of description and identification the state-
ment was true. Florence was known as the insured's
wife among their friends and could be located by that
term."

These two cases are quoted out of many to illustrate
the principle of law involved. These cases differ from
the one at bar in that, in them, the supposed wives
were living in unlawful cohabitation with the insured,
but the issue involved—the establishment of the iden-
tity of the beneficiaries—was the same. We deem it
unnecessary to lengthen this opinion by the citation of
further authorities to like effect.

The judgment will be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ.,
concur.