**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 11, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 11, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | No. 100314-5 (certified C21-141-MJP) |
| NEW YORK LIFE INSURANCE COMPANY, | |
| Plaintiff, | EN BANC |
| v. | |
| SIMON R. MITCHELL, | Filed: May 11, 2023 |
| Defendant. | |

STEPHENS, J.—Washington law requires group life insurance policies to have an incontestability clause providing that "the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue." RCW 48.24.120. The certified question in this case asks us whether an insurer may seek to invalidate a life insurance policy after this two-year period on the basis that the policies were void ab initio—meaning they were never "in force." *Id.*

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

New York Life Insurance (NY Life) issued two life insurance policies to Lorenzo Mitchell, and those policies named his nephew, Simon Mitchell, as the sole beneficiary. Lorenzo died more than two years after the policies were issued, and Simon sought to collect on the policies.[1] NY Life became aware that Lorenzo had Down syndrome and lived with significant intellectual disabilities. These facts raised questions about the circumstances under which the policies were issued. NY Life sued Simon in the United States District Court for the Western District of Washington, seeking declaratory relief that the policies were void ab initio under three possible theories: imposter fraud, incapacity, and lack of an insurable interest. Simon countered that the incontestability provision barred such a challenge to the policies. Finding no controlling Washington authority, the federal district court certified the following question to this court:

> Washington requires group life-insurance policies to include a clause that the policy may not be contested, except for nonpayment of premiums, after it has been in force for two years. Wash. Rev. Code § 48.24.120. If a policy contains such an incontestability clause and those two years have passed, can an insurer nevertheless obtain a declaratory judgment that the policy is void because (1) it was obtained by fraud by an imposter of the insured; (2) the insured lacked capacity to enter into a contract at the time it was purportedly made; or (3) the named beneficiary lacks an insurable interest in the life of the insured?

Ord. Certifying Question, No. C21-141-MJP at 1-2 (W.D. Wash. Oct. 20, 2021).

---

[1] Because this case involves multiple members of the Mitchell family, this opinion uses first names for clarity. No disrespect is intended.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

We answer the first and third parts of the certified question in the affirmative and conclude the incontestability provision does not bar those claims. However, we answer the second part of the certified question in the negative. Claims rooted in contract formation principles implicate Washington's statutory requirements for entering into life insurance contracts, and those requirements must be read alongside the incontestability statute. NY Life's first and third claims, if proved, would show that the policies were void ab initio and that no insurance contract was ever formed with Lorenzo. Because the incontestability provision cannot be read as *creating* an enforceable contract that did not otherwise exist, we hold that NY Life's first and third claims are not barred by that provision. In contrast, lack of capacity does not, on its own, render an insurance contract void; it renders it at most voidable. Because a voidable contract is not void ab initio, we hold the incontestability provision bars NY Life's second claim.

FACTS AND PROCEDURAL HISTORY

In May 2015, in response to an offer for group life insurance to American Association of Retired Persons members, NY Life received two applications purportedly signed by Lorenzo, each requesting $100,000 of coverage. Both applications listed Simon as the sole beneficiary of the policies. Lorenzo also apparently signed a request for a rider on the second life insurance policy.

3

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

NY Life issued both policies the next month with the requested $100,000 coverage, showing Simon as the sole beneficiary. Both policies included the following incontestability clause, as required by RCW 48.24.120:

> Except for nonpayment of PREMIUMS, WE cannot contest the validity of the insurance or reinstated insurance after it has been in force for two years during the INSURED's lifetime from: (1) the INSURANCE DATE, and (2) the date the insurance is reinstated, if applicable. To contest, WE will only rely upon statements signed by the OWNER in applying for such insurance. A copy of all statements must be furnished to the OWNER or to the beneficiary. Such statements are representations, not warranties.

Fed. Dist. Ct. Doc. (Doc.) 20-1, at 3, 7 (similar language). Both policies defined the "insurance date" as "the date that insurance under the POLICY takes effect, subject to the PREMIUM being paid." *Id.* at 4, 8 (similar language). NY Life also issued the requested rider of $12,500 in September 2017. Simon was a joint signatory on Lorenzo's bank account and had made the premium payments for the policy from Lorenzo's account.

Lorenzo died on January 2, 2019. His death certificate lists his cause of death as arrhythmia and Down syndrome. Simon submitted a claim to NY Life to collect on the benefits. Because Lorenzo died within two years of the issuance of the rider, NY Life opened an investigation into the claims and asked Simon if there had been a power of attorney or a guardian for Lorenzo. Simon told NY Life that his grandmother signed the life insurance policies for Lorenzo and that she had a medical power of attorney. But NY Life never received any power of attorney

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

documents, and it is now undisputed that none of Lorenzo's family members ever became his guardian or had power of attorney. Simon later told NY Life that Lorenzo could care for himself. Lorenzo's sister, Eunice Mitchell, submitted a declaration stating that she witnessed Lorenzo sign the insurance applications: "Lorenzo Mitchell did not require assistance, a Power of Attorney was not necessary." Doc. 26-13, at 4.

Simon also signed a release allowing NY Life to obtain Lorenzo's medical records. The records show that Lorenzo was diagnosed with Down syndrome when he was a child. Notes from Lorenzo's health exams describe him as "essentially non-communicative," Doc. 26-4, at 7, although he could "communicate some basic needs." Doc. 26-6, at 4. Lorenzo could answer "yes and no to questions [,] but it does not appear that he knows what is being asked." Doc. 26-7, at 3; *see also* Doc. 26-3, at 2 ("He is not very verbal but is communicative by pointing, using minimal words, and understands conversation to a limited exten[t] (knows when questioned about food and drink, but not his age and location, for example)."). Records also show that Lorenzo's family communicated his medical, social, and family history for him during exams.

Based on information about Lorenzo's condition, NY Life denied Simon's claim for payment on the policies. NY Life concluded that Lorenzo "would not have been able to complete the application for life insurance coverage independently or

5

that he would [not] have had the mental capacity to enter a binding contract." Doc. 22-1, at 47. It also claimed that the policies appeared to be "fraudulently purchased" and that "the information indicates that individuals contacted New York Life and obtained information fraudulently by identifying themselves as the Insured." *Id.* at 46, 47. After refusing to pay on the policies, NY Life refunded all premiums; however, Simon has not cashed those refund checks.

Following NY Life's denial of payment, Simon obtained legal representation, and his attorney asked NY Life for files related to the policies. After reviewing the information NY Life sent, Simon's attorney signed a declaration stating, "I saw no notes, letters, or any other indication showing that NY Life conducted any investigation before Lorenzo Mitchell's death, whether into his health history, his relationship with Simon R. Mitchell, or the circumstances surrounding the policy applications." Doc. 20, at 2.

In February 2021, NY Life sued Simon in the United States District Court for the Western District of Washington, requesting declaratory relief that the policies were unenforceable and void under three theories: (1) Simon lacked an insurable interest in Lorenzo's life, (2) the life insurance policies were obtained by fraud through someone posing as Lorenzo, and (3) Lorenzo lacked the capacity to enter into a life insurance contract. Simon moved for summary judgment dismissal of NY Life's claims based on the incontestability statute. NY Life opposed that motion but

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

noted that whether the incontestability provision applies to bar claims that the life insurance contracts are void ab initio presents an issue of "first impression in Washington." Doc. 25, at 2. Simon moved to certify the question of whether the incontestability provision bars NY Life's claims to this court, and the federal district court granted Simon's motion.

## ANALYSIS

We review certified questions de novo. *Allen v. Dameron*, 187 Wn.2d 692, 701, 389 P.3d 487 (2017). This case asks us to interpret the incontestability provision required in group life insurance contracts, RCW 48.24.120, as well as related insurance statutes regarding the prerequisites for forming a life insurance contract, RCW 48.18.030(1), .060. These issues of statutory interpretation are also subject to de novo review. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).

The goal of statutory interpretation is to carry out the legislature's intent, and we begin with the plain language of the statute. *Id*. at 762. "This plain meaning is derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). We apply a statute's plain language without further inquiry when it is unambiguous. *Id.* If a statute's language is amenable to more than one reasonable interpretation, then it is

7

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

ambiguous and we "'may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.'" *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

I.   The Incontestability Provision Does Not Bar All Claims by an Insurer Asserting That an Insurance Contract Is Void Ab Initio

Washington law comprehensively regulates insurance because it is a business that is "affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity." RCW 48.01.030. The statutory scheme generally places a "duty of preserving inviolate the integrity of insurance" on "the insurer, the insured, their providers, and their representatives." *Id.* One way Washington regulates insurance policies in the public interest is by requiring group life insurance policies to contain an incontestability clause. The statute states:

> There shall be a provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by an individual insured under the policy relating to his or her insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such individual's lifetime nor unless it is contained in a written instrument signed by him [or her].

RCW 48.24.120 (alteration in original).

Incontestability provisions in insurance contracts operate "as a form of statute of limitations." 17 STEVEN PLITT ET AL., COUCH ON INSURANCE 3D § 240:5 (2005).

8

Their purpose is twofold. First, such provisions allow the insured and the policy beneficiaries to rely on and plan around the existence of the policy after it has remained in force for a specified period of time. *See id*. § 240:1. Second, incontestability provisions encourage insurance companies to investigate "misrepresentations or other conditions of coverage which the insurer could, at least theoretically, have discovered through a reasonable investigation early on in the life of the policy." *Id.* To this end, incontestability provisions recognize the evidentiary burdens an insured would face if the insurer contested the policy a long time after issuing the policy. *Id.* § 240:5 (incontestability provisions "prevent[] an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured").

Relying on RCW 48.24.120 and cases from other jurisdictions interpreting similar statutes, NY Life argues incontestability provisions do not apply with respect to insurance contracts that are void ab initio because an incontestability clause presupposes an existing contract. NY Life views the incontestability provision as barring challenges to the "validity" of a life insurance policy but only "after it has been *in force* for two years from its date of issue." RCW 48.24.120 (emphasis added). Because a contract that is void ab initio was never "in force," NY Life contends the incontestability provision does not operate to bar claims rooted in

contract formation principles. It urges us not to uphold void contracts based on an incontestability statute because this "would be tantamount to enforcing contracts that are illegal or contrary to public policy." Br. of Resp't (Pl.'s Br.). at 29.[2]

Simon counters that we must read the statute to bar any and all defenses contesting the "validity" of the policy "except for nonpayment of premiums." RCW 48.24.120. He asks us to adopt a bright line rule that nonpayment of premiums is the sole exception to payment on a life insurance policy after the two year contestability period. Simon contends this blanket rule gives "insurers two years to investigate every policy's validity," thus, allowing adequate time for insurers to discover possible problems with the policy. Br. of Appellant (Br. of Def.) at 36-37. After that period, he argues, the insurer should bear any risk that a policy may turn out to be invalid.

No Washington case has directly addressed the questions presented here. Two cases from the 1930s discussing incontestability provisions offer little help. *Millis*

---

[2] Somewhat separately, NY Life contends the incontestability provision applies only to claims relating to the conduct of an insured, and not to claims involving the conduct of third parties. In support, it points to the statutory language requiring "that no statement made by an *individual insured* under the policy relating to his or her insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such individual's lifetime nor unless it is contained in a written instrument signed by him [or her]." RCW 48.24.120 (alteration in original) (emphasis added). We do not address this argument, as it is unnecessary to deciding this case and such a reading could unjustifiably narrow the scope of the statute.

*v. Cont'l Life Ins. Co.*, 162 Wash. 555, 298 P. 739 (1931); *Pac. Mut. Life Ins. Co. of Cal. v. Fishback*, 171 Wash. 244, 17 P.2d 841 (1933). This is because the version of the incontestability statute in effect at the time we decided those cases differs from the statute currently in effect. The previous statute provided:

> A provision that [the] policy, so far as it relates to life or endowment insurance, shall be incontestable after two years from *its date of issue* except for non-payment of premiums, and except for violation of the conditions of the policy relating to military or naval service in time of war.

LAWS OF 1911, ch. 49, § 184(2) (alteration in original) (emphasis added). Under the plain language of that statute, the incontestability period applied from the date the policy was "issued" regardless of whether the contract was valid at its inception.

Missing from the former statute is the current statute's language requiring every policy to contain an incontestability provision that bars claims "after [the policy] has been *in force* for two years from its date of issue." RCW 48.24.120 (emphasis added). A contract that is "in force" must be one that is "[i]n effect; operative; binding." BLACK'S LAW DICTIONARY 931 (11th ed. 2019). If the parties never formed a contract at inception or if the contract is rendered void ab initio, then there was never an insurance policy "in force" to which the incontestability provision applies. This differs from a contract that is voidable. *See Warner v. Hibler*, 146 Wash. 651, 654, 264 P. 423 (1928) ("There is a vast difference between void and voidable. 'Void' means that an instrument or transaction is so nugatory and

11

ineffectual that nothing can cure it; 'voidable,' when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it."). Other states recognize the significance of this language. *See Wood v. N.Y. Life Ins. Co.*, 255 Ga. 300, 307, 336 S.E.2d 806 (1985) (Georgia's Supreme Court explaining that "[t]he incontestability clauses, therefore, presuppose the existence of a contract 'in force.' However, an insurance contract that is void *ab initio* as against public policy is never 'in force,' cannot be ratified or affirmed, and is not subject to being enforced by the courts"); *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1064-68 (Del. 2011) (Delaware's Supreme Court concluding the same).

Given the plain language of RCW 48.24.120 concerning insurance policies that are "in force," we believe the incontestability provision is not as all encompassing as Simon suggests. Adopting Simon's proposed rule would be tantamount to creating a valid contract where one would not otherwise exist. Rather, the legislature plainly intended to make an enforceable contract a prerequisite to the application of an incontestability provision. NY Life's claims that go to the specific question of contract formation based on the lack of a legally authorized contracting party do not fall within the scope of the incontestability statute because they raise a question as to whether the policy was ever *in force*.

II. <u>NY Life's Claims That Would Render the Insurance Policies Void Are Not Barred by the Incontestability Statute</u>

As explained, the incontestability statute is not as all encompassing as Simon suggests, and that statute cannot create a binding contract where one does not otherwise exist. The application of the incontestability provision here turns on the nature of NY Life's claims. NY Life's first two claims rest on the allegation that someone other than Lorenzo took out the policies on his life. If Simon or someone else other than Lorenzo procured the policies, then NY Life argues the policies are void ab initio: first, because they lack the requisite insurable interest in Lorenzo's life to create an enforceable policy and, second, because Lorenzo did not consent to a third party insuring his life. In the alternative, NY Life claims that if Lorenzo did sign the insurance contracts, then he lacked capacity to enter into the contracts and the policies are void. We address each of NY Life's claims within the context of the relevant insurance statutes.

*A. The Incontestability Statute Does Not Bar NY Life's Claim That the Life Insurance Policies Are Void Due to the Lack of an Insurable Interest*

NY Life argues an insurable interest is necessary to form an insurance contract between an insurance company and someone other than the insured. While we have never decided whether an insurer can challenge the existence of an insurable interest after the contestability period, most jurisdictions conclude that an insurer can. 17 PLITT ET AL., *supra*, § 240:82; *see also* 7 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 17:5 (4th ed. 2010) ("The majority of courts to have

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

considered the question have ruled that the public policy underlying the requirement of an insurable interest outweighs that behind the incontestability clause, often reaching that result by holding the insurance policy to have been void *ab initio . . . .*"). Considering the governing insurance statutes in this state, we hold that Washington law requires an insurable interest at inception to form an insurance contract procured by a party other than the insured and that the insurance contract is void ab initio without such an interest.

Washington law expressly prohibits insuring the life of another person when the beneficiary lacks an insurable interest in the insured's life. The relevant statute states, "A person *may not* insure the life or body of another individual unless the benefits under the contract are payable to the individual insured or the individual's personal representative, or to a person having, at the time when the contract was made, an insurable interest in the individual insured." RCW 48.18.030(1) (emphasis added). Of the minimal indications we have about the legislature's intent with regard to insurable interests, it has consistently referred to insurable interest as a requirement of a life insurance contract procured by one person on another's life. FINAL B. REP. ON S.B. 5196, at 1, 59th Leg., Reg. Sess. (Wash. 2005) ("Generally, the ability to obtain insurance on another person depends upon whether there is an 'insurable interest' in that person."); FINAL B. REP. ON SUBSTITUTE S.B. 6241, at 1, 52d Leg., Reg. Sess. (Wash. 1992) ("All life insurance policies must include an

14

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

'insurable interest' as a provision of their contractual terms. The definition of insurable interest has been interpreted narrowly."); LAWS OF 1947, ch. 79, § .18.03 (noting in margin "Insurable interest required").

This court has also recognized why an insurable interest is necessary when insuring the life of another:

> If . . . one person, of his own volition and at his own cost, takes out an insurance policy on the life of another payable to himself, he must have an insurable interest in that other, else the contract is a mere wager and void as against public policy.

*Buckner v. Ridgely Protective Ass'n*, 131 Wash. 174, 182, 229 P. 313 (1924). More generally, we have noted that wagering contracts are void ab initio as against public policy. *Davidson v. Hensen*, 135 Wn.2d 112, 130, 954 P.2d 1327 (1998) (noting "a distinction between illegal contracts which are void ab initio (i.e., those which are criminal or against public morals/policy, *such as wagering contracts*) and a contract in which some rights are preserved but may not be enforced by certain parties under certain circumstances" (emphasis added)).

While this court has not directly addressed the statutory insurable interest requirement for life insurance contracts, Division One of the Court of Appeals has concluded that an insurable interest is necessary to form such a contract. *In re Est. of D'Agosto*, 134 Wn. App. 390, 139 P.3d 1125 (2006). In *D'Agosto*, the Court of Appeals considered whether intervening actions of an insured after the insurance contract was formed could terminate an insurable interest that existed at inception.

15

*Id.* at 394. In deciding they could not, the Court of Appeals looked to the former common law rule, which "recognized that insurance contracts upon matters in which the insured party had no interest were wagering policies void as against public policy." *Id*. at 395. It reasoned an insurable interest is preserved and "adequately safeguarded by examining the insurance contract at its formation" and, therefore, intervening acts do not terminate the contract when an insurable interest exists at the contract's inception. *Id.* at 397. Central to the court's reasoning was the understanding that a valid life insurance contract required an insurable interest at inception. *Id.* at 396 ("[A]n insurable interest in another's life must exist at the inception of the policy in order to create a valid contract . . . ."); *see also* 7 WILLISTON & LORD, *supra*, § 17.5 ("[I]t is clear that a life insurance policy cannot validly be taken out by a person who has no insurable interest in the life of the insured . . . .").

We follow the reasoning of the Court of Appeals and the majority of other jurisdictions and hold that RCW 48.18.030 requires an individual procuring a life insurance policy on another to have an insurable interest in the insured at the inception of the insurance contract. Insurance contracts lacking the requisite insurable interest as defined by RCW 48.18.030 are void as against public policy. As explained in *Buckner*, requiring an insurable interest at the inception of an insurance contract preserves public confidence in the integrity of insurance contracts by preventing contracts based only on a monetary interest in the insured's death.

16

131 Wash. at 182; *see also* 7 WILLISTON & LORD, *supra*, § 17.5 (insurance policies lacking an insurable interest are "a pure wager that gives that person a sinister counter-interest in having the life come to an end"). [3]

Simon cites two out-of-state cases to argue an insurance contract does not require an insurable interest. He first cites a Florida case concerning the applicability of its incontestability statute to a claim that stranger-originated life insurance policies—those in which an investor purchases a person's life insurance policy and transfers it after the contestability period—could be challenged on the basis that the investor who eventually bought the policy lacked an insurable interest. *Wells Fargo Bank, N.A. v. Pruco Life Ins. Co.*, 200 So. 3d 1202, 1203 (Fla. 2016). Following reasoning similar to Division One in *D'Agosto*, the Florida court concluded that the insurable interest statute required an insurable interest only at the inception of the contract and that the transfer of a policy to an investor did not terminate that interest to render the contract void ab initio. *Id.* at 1206. This suggests Florida's

---

[3] Simon also claims the remedy found in RCW 48.18.030(2) would be null if we held that the incontestability provision does not bar claims that a policy is void ab initio absent an insurable interest. That statute permits an insured or an insured's executor to recover any benefits paid to a beneficiary of a life insurance policy if the beneficiary lacked an insurable interest. However, that provision has little relevance here because Simon has not yet collected on the policies, and it provides a remedy to *an insured* rather than a beneficiary in that specific context. Additionally, that provision supports the notion that the legislature intended an insurable interest and legal capacity to be requirements of life insurance contracts by recognizing that payment of benefits to a beneficiary lacking an insurable interest does not thereby render that contract enforceable.

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

incontestability statute—like Washington's—would not apply to a challenge based on the lack of an insurable interest at the inception of the contract.

Simon also relies on a New York case in which the court considered whether an incontestability provision barred an insurer's claim for lack of an insurable interest. *New Eng. Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74, 76, 535 N.E.2d 270, 538 N.Y.S.2d 217 (1989). The court determined the previous statute's language—which used the phrase "no contract should be 'issued'"—expressed a legislative intent to render void contracts without an insurable interest, so the current statute using "'procured'" language reflects the legislature's intent to change the rule. *Caruso*, 73 N.Y.2d at 79 (citing 1892 N.Y. Laws, ch. 690, § 55; N.Y. INS. L. § 3205(b) (McKinney 1989)). Given this change, the court concluded that the life insurance contracts were void ab initio and held that there was no "public policy of this State which militates against enforcement of the incontestability clause in these circumstances." *Id.* at 81.

*Caruso* is distinguishable to the case before us because Washington's statute states unequivocally that "[a] person may not insure the life or body of another individual" without an insurable interest. RCW 48.18.030(1). We interpret this language as requiring an insurable interest at inception. As discussed above, this rule prevents wagering contracts, which we have said to be void as against public policy. *See, e.g.*, *Davidson*, 135 Wn.2d at 130. Accordingly, the incontestability

18

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

provision does not bar NY Life's claim that Simon lacked an insurable interest in Lorenzo's life, as a contract without that interest is void ab initio.

Finally, we acknowledge Simon's concern that insurable interest requirements could disproportionately impact nontraditional family structures. However, the language of Washington's statute contemplates interests in the insured beyond a narrow nuclear family interest. *See* RCW 48.18.030(3)(a)(i) (insurable interest exists between "individuals related closely by blood or by law [with] a substantial interest engendered by love and affection"), (ii) ("In the case of other persons, a lawful and substantial economic interest in having the life, health, or bodily safety of the individual insured continue, as distinguished from an interest that would arise only by, or would be enhanced in value by, the death, disability, or injury of the individual insured."). Even if the statute did not expressly contemplate these other interests, the beneficiary requirement applies only to insurance contracts procured by someone other than the insured and the insured, can name any person as the beneficiary regardless of familial affiliation. RCW 48.18.030(1); *Levas v. Metro. Life Ins. Co.*, 175 Wash. 159, 163, 26 P.2d 1032 (1933) (when beneficiary is named by the insured, "[i]t is not necessary that the beneficiary have an insurable interest in the life of the insured"). Moreover, the certified question does not ask us to decide whether an insurable interest actually exists between Simon and Lorenzo, and any questions about the family relationships are not before us. That question is reserved

19

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

for the district court, and NY Life will have the burden to prove that Simon did not

have a "substantial interest engendered by love and affection" in his uncle's life.

RCW 48.18.030(3)(a)(i).

> *B. The Incontestability Statute Does Not Bar NY Life's Claim That a Life*
> *Insurance Contract Procured by a Third Party Without Legal Authority Is*
> *Void in the Absence of the Insured's Consent*

NY Life alleges that someone posing as Lorenzo, without his consent,

procured and signed the insurance contracts at issue. We hold that an insurance

policy may be contested after the two-year period if there is evidence that someone

other than the insured signed the application, using the name of the insured, without

legal authority to do so and without the insured's consent.

Generally, an incontestability clause bars claims alleging fraud or

misrepresentation in the formation of the insurance contract unless that

incontestability clause "explicitly except[s]" such claims. 17 PLITT ET AL., *supra*, §

240:63; *see, e.g.*, *Hein v. Fam. Life Ins. Co.*, 60 Wn.2d 91, 97, 376 P.2d 152 (1962)

(recognizing that a claim based on fraudulent misrepresentation in the insurance

application would be barred under the incontestability provision). In Washington, a

fraudulent misrepresentation claim typically renders the insurance contract voidable

rather than void. *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of*

*Yakima*, 122 Wn.2d 371, 390, 858 P.2d 245 (1993) ("A fraudulent misrepresentation

or, under the right circumstances, even a material innocent misrepresentation can

20

render a contract voidable."). Fraud claims also require a heightened standard of proof. *See Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920, 425 P.2d 891 (1967) (explaining one element of fraud is "'intent that [the fraudulent statement] should be acted on by the person to whom it is made'" (quoting *Webster v. L. Romano Eng'g Corp.*, 178 Wash. 118, 120, 34 P.2d 428 (1934)).

However, courts generally distinguish between the fraudulent statements of the insured ("fraudulent misrepresentation") and the fraud of a third party posing as the insured ("imposter fraud"). *See, e.g.*, *Amex Life Assur. Co. v. Superior Ct.*, 14 Cal. 4th 1231, 1243, 930 P.2d 1264, 60 Cal. Rptr. 2d 898 (1997). Fraudulent statements of the insured are generally subject to the incontestability clause and are not grounds to set the contract aside after the statutory period. *Id.* On the other hand, courts have held that the incontestability clause does not apply to imposter fraud. *Id.*

The reason for this rule is explained in *Logan v. Tex. Mut. Life Ins. Ass'n*, 121 Tex. 603, 613, 51 S.W.2d 288 (1932). There, the Texas Supreme Court explained that "[i]f the insured never made any application to the association for insurance, either by making the application herself, or authori[zi]ng another to do so for her, then there was never a contract between the insured and the insurer and the [incontestability] statute . . . could not have application at all." *Id.* Understood this way, "imposter fraud" claims are not strictly fraud claims. Rather, they are claims rooted in a failure to contract—such as a lack of mutual assent—rendering a contract

21

void ab initio. *See, e.g.*, *Obartuch v. Sec. Mut. Life Ins. Co.*, 114 F.2d 873, 878, 875 (7th Cir. 1940) (concluding an insurance contract is void and the incontestability provision does not apply because there was no meeting of the minds given that the insured had no "knowledge as to the alleged contract of insurance," "had no intention of insuring his life[,] and was not the person submitted for medical examination").

Washington law has codified this "imposter fraud" rule as relating to the issue of consent. RCW 48.18.060 states that except in limited circumstances not alleged here, "[a] life or disability insurance contract upon an individual may not be made *or take effect* unless at the time the contract is made the individual insured applies for or consents to the contract in writing . . . ." (Emphasis added.) The plain language of the statute requires the insured's consent before the insurance contract can come into effect, unless one of the exceptions applies. Absent such consent, the contract is void ab initio. *See* BLACK'S, *supra*, at 931 (A contract that is "in force" is one that is "[*i*]*n effect*; operative; binding.").

Simon urges us to read the incontestability statute to disallow any claims based on fraudulent misrepresentation, and he would include challenges to consent in cases of so-called "imposter fraud." In support, he points to the disability insurance statute, which expressly permits insurers to raise a defense for fraudulent misstatements. RCW 48.20.052 (after two years from issuance, "no misstatements except fraudulent misstatements, made by the applicant in the application for such

22

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

policy shall be used to void the policy"). For Simon, that the legislature omitted "fraudulent misstatements" as an exception to the group life insurance incontestability statute suggests its intent to bar an insurer from raising any claim not expressly listed in that statute. We reject Simon's argument because it fails to read the incontestability statute in context with RCW 48.18.060 and does not acknowledge that lack of consent renders an insurance contract void ab initio, making RCW 48.24.120 inapplicable.

Here, NY Life's "imposter fraud" argument asserts a lack of consent by Lorenzo and a failure to contract. NY Life does not rely on any fraudulent misstatements about Lorenzo's health in the insurance applications as grounds to contest the validity of the contract after the two-year incontestability period. Instead, it claims that if Lorenzo never signed the contract and someone else signed it without power of attorney, then "there was no contractual relationship between Lorenzo and NY Life." Pl.'s Br. at 28. This argument does not depend on a finding of fraud; lack of consent could equally encompass a situation involving an innocent mistake (e.g., a mistaken belief that no power of attorney was required). Assuming that Lorenzo or his family made an innocent mistake by not following the statutory requirements for forming an insurance contract, NY Life's claim would still be viable if it can prove that Lorenzo never "consent[ed] to the contract in writing." RCW 48.18.060. If NY Life can show that the policy at issue did not fall under any

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

of the exceptions set out in RCW 48.18.060, then it may contest the policy on the ground that Lorenzo did not consent to entering into a contract in writing or make the application himself.

> *C. The Incontestability Statute Bars NY Life's Claim Based on Lorenzo's Lack of Capacity To Form a Contract, as This Claim Would Merely Render the Policy Voidable*

In the alternative, NY Life argues that if Lorenzo signed the policy applications in question, then no enforceable contract was created because Lorenzo lacked the legal capacity to contract. There is no question that all parties must have the requisite legal capacity to create a valid contract. *Page v. Prudential Life Ins. Co. of Am.*, 12 Wn.2d 101, 109, 120 P.2d 527 (1942) ("'To make a valid contract each party must be of sufficient mental capacity to appreciate the effect of what he is doing and must also be able to exercise his will with reference thereto.'" (quoting 17 C.J.S. *Contracts* § 133 (1939))). Washington law contemplates legal capacity as a necessary component to forming an insurance contract: "Any individual of competent legal capacity may insure his or her own life or body for the benefit of any person." RCW 48.18.030(1). But that capacity is necessary to form a valid insurance contract does not determine whether the incontestability statute bars NY Life's capacity claim.

While we have not previously answered this exact question, we have held that lack of capacity renders a contract voidable in other contexts. For example, if a

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

person is intoxicated at the time of contracting, the contract is voidable. *In re Pet. of Burns*, 194 Wash. 293, 300, 77 P.2d 1025 (1938). Washington law also finds contracts entered into by minors to be voidable, not void, even though minors typically do not have full legal capacity. RCW 26.28.030; *Paulson v. McMillan*, 8 Wn.2d 295, 299, 111 P.2d 983 (1941) ("A minor is, therefore, capable of making contracts. They are voidable, but, until avoided by disaffirmance, they are contracts nevertheless.").

Also relevant is the legislature's 2005 amendment to the consent statute discussed above. In 2005, the legislature removed language from that statute specifically requiring the insured to be "of competent legal capacity to contract." LAWS OF 2005, ch. 337, § 5. The statute had, since at least 1947, read, "No life or disability insurance contract upon an individual . . . shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, in writing applies therefor . . . ." LAWS OF 1947, ch. 79, § .18.06. This suggests a legislative intent to render contracts based on a lack of consent voidable rather than void.

Consistent with this line of precedent and legislative history, we hold that the incontestability clause bars an insurer's claim that an insurance contract is invalid based on evidence of the insured's lack of capacity. This holding also aligns with the prevailing view that an incompetent person's transactions are voidable at the

25

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

request of the incompetent person or their representative. 5 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 10:3 (4th ed. 2009); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 15, at 41 (AM. L. INST. 1981) ("A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect."). The majority of jurisdictions to have addressed the question also apply this general rule to insurance contracts. 3 STEVEN PLITT ET AL., COUCH ON INSURANCE, 3D § 40:2 (rev. ed. 2011) ("[A] contract for insurance obtained by a person lacking capacity to contract is not automatically void but is voidable at the option of the insured, not at the election of the insurer."). In so holding, we recognize that questions about a person's capacity to contract are fact-intensive and relate to a specific moment in time. Indeed, capacity may be fluid in some situations, as with individuals who live with dementia or schizophrenia. Incontestability statutes appropriately put the burden on insurance companies to timely raise claims based on an asserted lack of capacity, rather than requiring insureds to answer such claims years after a policy is issued.

NY Life urges us to reject the very premise of the majority rule and hold that insurance contracts entered into without capacity are void. It cites to a Pennsylvania case where a daughter posed as her mother during a medical exam and took out a life insurance policy on her mother's life, naming herself as the beneficiary. *Ludwinska v. John Hancock Mut. Life Ins. Co.*, 317 Pa. 577, 578, 178 A. 28 (1935).

26

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

In holding that the incontestability statute did not bar the insurer's claim, the court explained the importance of ensuring that someone with legal capacity entered into the contract at inception:

> To secure a policy of insurance there must be some offer or application by one capable of making it. The contract must be made by someone capable of contracting under the insurance law. Without this neither the incontestable clause contained in the policy nor the policy itself has any life. The clause can rise no higher than the policy; the incontestable clause cannot of itself create the contract.

*Id.* at 580. While we agree that an incontestability provision cannot create a valid insurance contract where one does not exist, we do not read the Pennsylvania case as resting on the insured's lack of capacity. Instead, the court ultimately found that the daughter had committed imposter fraud in taking out the policy in her mother's name. *Id.* at 581-82. Regardless of whether Pennsylvania takes a different approach to such fraud claims than under Washington law, this case provides no support for including claims based on lack of capacity among those contract formation claims that render an insurance policy void ab initio.

Washington law is clear that lack of capacity on the part of one of the parties to a contract does not make that contract void ab initio. At most, it renders the contract voidable. The incontestability statute applies, and NY Life cannot challenge the life insurance contract on the basis of Lorenzo's lack of capacity.

27

In sum, the incontestability statute operates as a limitation period on certain claims brought by insurance companies wishing to invalidate an insurance policy. Insurers structure their business in light of the incontestability statute and insureds plan for those benefits after paying premiums for years. An insurance company's failure to investigate the circumstances under which it issued a policy within the contestability period does not absolve it from paying those benefits to the beneficiary. However, the incontestability statute does not create an enforceable contract when that contract is void ab initio. In light of the purpose and intent of the incontestability statute, we hold that the statute does not bar NY Life's insurable interest and lack of consent ("imposter fraud") claims because those claims go to whether an insurance contract was ever in existence to begin with. But because lack of capacity merely renders a contract voidable rather than void, the incontestability clause does bar NY Life's claim relating to Lorenzo's lack of capacity.

III.    Attorney Fees

Simon requests an award of attorney fees under the equitable principles discussed in *Olympic S.S. Co. v. Centennial Ins. Co*., 117 Wn.2d 37, 811 P.2d 673 (1991), and RAP 18.1. In *Olympic S.S.*, this court highlighted the power disparity between an insurer and an insured and recognized that attorney fees are "required in any legal action where the insurer compels the insured to assume the burden of legal

action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Id.* at 53.

Neither party addresses whether Simon's request for attorney fees is dependent on him prevailing in the coverage dispute. However, "Washington generally follows the 'American rule' on attorney fees, which provides that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery is permitted by contract, statute, or some recognized ground of equity." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143, 930 P.2d 288 (1997). Although the discussion of attorney fees in *Olympic S.S.* does not directly address whether an insured must prevail to obtain attorney fees, the insured did prevail in that case. *See* 117 Wn.2d at 42-51. Subsequent cases granting fees pursuant to *Olympic S.S.* have done so when the insured is the prevailing party. *McLaughlin v. Travelers Com. Ins. Co.*, 196 Wn.2d 631, 643, 476 P.3d 1032 (2020) ("Here, as the prevailing insured in this insurance coverage case, McLaughlin is entitled to fees."); *King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 630, 398 P.3d 1093 (2017) ("An award of attorney fees under *Olympic Steamship* is restricted to disputes where the insurer forces the insured to litigate coverage and then loses."); *Leingang*, 131 Wn.2d at 147 ("If a claim is denied on the basis of an alleged lack of coverage and a court later determines there is coverage, then the case would fall under the rule of *Olympic*

29

*New York Life Ins. Co. v. Mitchell*, No. 100314-5

*Steamship*."). Because we do not answer the entire certified question in the negative, Simon has not prevailed in this court, and we decline his request for attorney fees.

CONCLUSION

We answer yes to the first and third portions of the certified question regarding "imposter fraud" (to the extent the "imposter fraud" claims fall under RCW 48.18.060) and insurable interests, and we answer no to the second portion of the certified question regarding Lorenzo's capacity to contract. While incontestability provisions generally bar claims that seek to negate a policy after a certain period, when the statutory requirements for an insurance contract are not met, and absent those requirements the contract would be void, there is no contract to which an incontestability provision applies. To the extent NY Life's claims relate to the requirements that the legislature intended to be present at inception in order to form a life insurance contract, the incontestability provision does not operate to bar these claims.

_____
Stephens, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Whitener, J.

_____
Owens, J.

_____
Larsen, J.P.T.